IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MEGAN E. MOORE                                                          PLAINTIFF

      v.                          Civil No. 2:21-cv-02041-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,[1]
Social Security Administration                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, Megan E. Moore, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (the "Commissioner")

denying her claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).   In this judicial

review, the Court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision.   *See* 42 U.S.C. § 405(g).

## I.        Procedural Background

      Plaintiff filed her application for benefits on November 20, 2018, alleging disability

beginning August 25, 2015, due to post-traumatic stress disorder ("PTSD"), migraines,

autoimmune disorder, heart problems, pancreas problems, hypotension, anxiety, and depression.

(ECF No. 14-2, p. 31; ECF No. 14-9, p. 6).   Plaintiff was 25 years old on the alleged disability

date, has a limited education, and is unable to perform any past relevant work ("PRW").   (ECF

No. 14-2, pp. 42-43).   The Commissioner denied her application initially and on reconsideration.

*Id*. at 31.   At Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the Defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hearing on July 13, 2020, via telephone due to the extraordinary circumstance presented by the COVID-19 pandemic. (ECF No. 14-5, pp. 28-83). Plaintiff was present and represented by counsel. *Id*. at 28, 30. At the hearing, Plaintiff amended her alleged onset date to December 7, 2017. *Id*. at 33-35.

In a decision issued on August 6, 2020, the ALJ concluded that Plaintiff's undifferentiated connective tissue disease, migraine headaches, depression, anxiety, PTSD, syncope, chronic pain, and fatigue were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 14-2, pp. 31-44). She found Plaintiff capable of performing "sedentary work as defined in 20 C.F.R. § 404.1567(a) except due to syncope no hazards to avoid such as ladders, ropes, scaffolds, moving mechanical parts, unprotected heights, deep water and open flames; due to migraines no bright sunshine, no concentrated exposure to dust, fumes or other pulmonary irritants and office level noise; frequent bilateral handle and finger; simple routine repetitive tasks with supervision that is simple, direct and concrete; social interaction that is incidental to work performed." *Id*. at 36-42. With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a document preparer, printed circuit board inspector, and copy examiner. *Id*. at 43-44. Plaintiff was found not to be under a disability from her alleged onset date through the date of the ALJ's decision. *Id*. at 44.

The Appeals Council denied Plaintiff's request for review on January 7, 2021. (ECF No. 14-2, pp. 2-6). Plaintiff then filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 17, 18), and the case is ready for decision.

## II.        Summary of the Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case.  Because Plaintiff's appeal concerns whether her migraine headaches, rheumatoid arthritis, lupus, and psychological impairments prevent her from sedentary work with additional limitations, the undersigned will only recount the evidence relevant to that claim.  In addition, the undersigned notes the relevant period in this case is December 7, 2017, the alleged onset date, to December 31, 2020, the date last insured.

The relevant medical evidence contains generally mild exam findings with conservative and effective treatment modalities for Plaintiff's symptoms.   In November 2017, Plaintiff demonstrated a normal range of motion of the back and musculoskeletal system.  (ECF No. 14-11, p. 138).  Plaintiff was cooperative and her neurological exam showed no neurological deficits.  *Id.* at 139.  A psychiatric exam showed good judgment, normal mood, and normal affect.  *Id.* at 16-19.  Plaintiff reported PTSD and palpitations, and the treatment provider referred her to psychiatry and gave her a 30-day heart monitor.  *Id.*

In December 2017, Plaintiff sought treatment for lower back, hip, leg, and knee pain.  (ECF No. 14-10, pp. 87-90).  She reported that a recent lumbar epidural steroid injection worked well and allowed her to work more.  She explained that the positive effects were wearing off, she still experienced knee pain, and she had a fall last month.  On examination, Plaintiff exhibited no acute distress.  She was orientated to person, place, and time with normal recent and remote memory. *Id.*  Treatment providers continued Plaintiff on her medication regimen of pain medication to treat bilateral sciatica, lumbosacral radiculopathy, arthralgia of the knees, and chronic pain syndrome. *Id*. at 78-79.

In January 2018, Plaintiff demonstrated an alert and normal affect as well as orientation to time, place, and person. (ECF No. 14-10, pp. 122-24). The treatment provider noted that Plaintiff appeared comfortable, well-nourished, and well-developed. She exhibited a normal gait with normal motor strength and tone. On a musculoskeletal examination, Plaintiff exhibited no joint tenderness, swelling, or erythema. *Id.*

Plaintiff continued treatment for reportedly worsening anxiety through February and March 2018. (ECF No. 14-11, pp. 161-164). The examinations revealed gait, strength, tone, and station all within normal limits. Plaintiff was well groomed; exhibited good eye contact; had no problems with speech; and showed linear, goal directed thought processes and content. She exhibited cognition, memory, attention, concentration, and fund of knowledge all within normal limits. She appeared euthymic and was assessed with a good prognosis. Plaintiff's medications were adjusted. *Id.*

In April 2018, Plaintiff demonstrated a full range of motion in all extremities without edema. (ECF No. 14-10, pp. 150). She had normal strength, intact senses, and an appropriate mood. *Id.* She exhibited normal muscle strength and a normal gait. (ECF No. 14-11, pp. 158-59). She was fully oriented, made good eye contact, and exhibited a normal mood and affect. Plaintiff also demonstrated normal thought process, cognition, memory, and concentration. *Id.*

Plaintiff continued treatment for complaints of low back pain and anxiety in May 2018. (ECF No. 14-13, pp. 33-39). Examinations showed generally normal findings, including gait, muscle strength, and musculoskeletal range of motion all within normal limits. (ECF No. 14-11, pp. 156-57). Plaintiff exhibited some anxiety but demonstrated full orientation, good eye contact, normal thought process, normal cognition, normal memory, fair insight and judgment, normal concentration, average knowledge, and no speech problems. *Id.*

In June and July 2018, Plaintiff continued medication management for her symptoms.  She demonstrated a full range of motion in all extremities, normal motor strength, and an intact sensory exam.  (ECF No. 14-10, pp. 147).  She displayed an appropriate mood, and physical and psychiatric examinations were normal.  (ECF No. 14-11, pp. 86; ECF No. 14-14, pp. 12).  Examinations were generally unremarkable apart from some decreased sensation, and Plaintiff demonstrated a normal gait, normal muscle strength, and unremarkable neurological findings.  The treatment provider noted no edema in her extremities and observed that she was pleasant and in no distress.  (ECF No. 14-10, pp. 144, 228-32; ECF No. 14-11, p. 83; ECF No. 14-15, p. 22).

Plaintiff continued treatment with her rheumatologist throughout September 2018.  (ECF No. 14-11, pp. 47-51, 172-78).  Her chief complaint was total body pain.  The treatment provider noted "mild diffuse paired tender points of fibromyalgia mild trapezius, medial scapulae, second costochondral space, anterior cervical area, occipital cervical junction, lateral elbows, greater trochanters, and medial knees."  Plaintiff also reported mild pain with cervical spine motion, and the treatment provider noted minimal diffuse swelling of the left hand and mild tenderness at the hands to metacarpophalangeal squeeze.  *Id.*

In October, Plaintiff reported joint pain that disrupted her sleep, and the treatment provider assessed her for joint pain and positive ANA.  (ECF No. 14-11, pp. 66-69).  Additional physical exams showed mild pain with motion of the cervical spine, some diffuse swelling of the left hand, and mild rheumatoid arthritis changes in both hands.  *Id.* at 49.  Plaintiff's other systems were unremarkable, and her extremities were described as normal with no edema.  Plaintiff was fully oriented with an appropriate mood and affect during the mental status exams.  *Id.*

Thoracic and lumbar spine x-rays showed no significant abnormalities in November 2018.  (ECF No. 14-11, p. 229).  Plaintiff's physical and mental exam findings were again unremarkable

or normal.  She exhibited no musculoskeletal tenderness, swelling, effusion, or limitation of range of motion.  *Id*. at 194.

Plaintiff continued treatment for reportedly increasing anxiety in December 2018.  (ECF No. 14-11, p. 153).  Her physical exam was unremarkable, and the mental status exam findings were also within normal limits.  The treatment provider noted that Plaintiff's reported mood as "stressed" was incongruent with her euthymic affect.  *Id*.

In January 2019, Plaintiff continued treatment for pain in the hands, feet, and upper neck.  (ECF No. 14-11, p. 200).  She reported that medications helped, and the physical exam showed unremarkable findings, including no tenderness, swelling, or limited range of motion.  *Id*.  Plaintiff sought treatment for anemia in February 2019.  *Id*. at 236.  The physical exam showed some right wrist weakness, but normal motor strength and tone, gait, station, ambulation, and movement of all extremities.  Plaintiff's mental status was also unremarkable.  *Id*. at 239.

Also in February 2019, Plaintiff submitted a function report recounting her daily activities and the impact of her impairments on her daily life.  (ECF No. 14-9, pp. 24-31).  She stated that her ability to work was limited by inability to stand for very long and migraines that kept her down at least twice a week.  She reported that she took medication and did not experience any side effects from them.  She stated that she needed to wear a back brace when going out and that she had been prescribed one in 2017.  Stress caused a migraine and tension in her neck, and she could not handle changes in routine at all.  *Id*.  She could follow written instructions, though she had problems remembering spoken instructions.  *Id*.  Her hobbies included watching television and spending time with her children.  She was able to drive and go out independently.  Due to problems standing and lifting, Plaintiff stated that she did not do any house or yard work.  Due to inability to stand, bend, and lift pans, she could not prepare her own meals.  She explained that she could dress and

bathe though it caused pain and she needed reminders from her husband to shower.  She stated that she did not do her hair as she could not hold her arms up long enough to complete it.  She also needed help shaving her legs.  While she reported that she only slept for about three hours at a time at night due to pain, she also stated that she got her five children ready for school and on the bus every morning.  *Id.*

Plaintiff also submitted a pain questionnaire detailing her limitations.  (ECF No. 14-9, pp. 32-33).  She reported that she suffered from unusual fatigue since 2015 and that she required a three-hour nap at least twice daily.  She described pain in her lower back, hands, and feet as well as migraines, depression, and PTSD.  Walking, carrying, and sitting for too long aggravated the pain, while massages alleviated the pain only sometimes.  She reiterated that she did not experience any side effects from her medications.  She could stand, walk, or sit for about 10 minutes before the pain occurred.  *Id.*

Dr. Joshua Clark also submitted a headache questionnaire in February 2019 stating that Plaintiff's migraines occurred more often than once a week, with each migraine lasting between three hours and three days.  (ECF No. 14-11, pp. 233-34).  Dr. Clark's checkmark form noted Plaintiff's experience of aura, photophobia, phonophobia, throbbing, and pulsating.  Plaintiff required an emergency room visit in the past year and her response to medications was poor.  Dr. Clark concluded that migraines would interfere with Plaintiff's ability to work, and he opined that she would miss more than one day of work per week.  *Id.*

In April 2019, Plaintiff continued treatment for rheumatoid arthritis.  (ECF No. 14-12, p. 14).  Protection from the sun relieved her pain somewhat, but her ankles reportedly felt weak such that she wore boots for added support.  The physical exam revealed mild arthritic changes in the hands but otherwise normal findings.  Plaintiff's psychiatric exam was also normal.  Plaintiff

reported pain all over her body and particularly in her ankles, knees, and hands the following month. (ECF No. 14-13, p. 251). The physical exam revealed mild arthritic changes in her hands, but her knees and ankles showed no tenderness, swelling, effusion, or limitation to range of motion. She had a normal psychiatric exam. *Id*.

Also in May 2019, Plaintiff sought treatment for a headache and the treatment provider diagnosed it as a migraine without aura and not intractable. (ECF No. 14-13, p. 14). Upon examination, Plaintiff demonstrated a normal range of motion of the neck, normal muscle tone, and a normal psychiatric exam. *Id*.

A knee injury after falling out of a folding chair in June 2019 caused Plaintiff a limp, a reduced range of motion of the left knee, and a bruised thigh. (ECF No. 14-13, pp. 10-14). She exhibited some decreased range of motion and ecchymosis in the left knee, but unremarkable findings in all other systems, including psychiatric, were noted. *Id*. at 13.

Plaintiff reported in July 2019 that her lupus and rheumatoid arthritis flare ups were debilitating and that her headaches were worsening and becoming more frequent. (ECF No. 14-9, p. 38). The only medication side-effects reported were some drowsiness and constipation. Plaintiff stated that she could not walk more than 30 feet without getting out of breath. *Id*.

She also reported chronic anemia beginning in July 2019. (ECF No. 14-9, pp. 58-64). She stated that she required vitamin B12 injections weekly as well as iron and vitamin C supplements. Plaintiff reported additional side effects of medication, including bruising, nausea, drowsiness, trouble sleeping, weakness, weight gain, and upset stomach. Plaintiff now stated she could not walk more than 100 feet without getting out of breath, had difficulty washing her hair, and that her doctor completed paperwork for handicap tags for her vehicle. *Id*. Also in July, state agency

medical consultant Kristin Jarrard, M.D., assessed Plaintiff with a light RFC.  (ECF No. 14-6, pp. 32-33).

In August 2019, Plaintiff submitted an updated function report stating that her ability to work was limited by lupus, the chemotherapy she was on to treat it, inability to spend time in the sun, and constant swelling and stiffness in her joints.  (ECF No. 14-9, pp. 49-56).  Plaintiff's activities now included preparing her children for school, taking them to school, having lunch, picking up her children from school, preparing dinner for herself and the children, helping them with homework, and bathing them.  The rest of her time was reportedly spent in bed.  If pain prevented her from getting out of bed, her parents would help care for the children.  *Id*.  She no longer reported difficulty bathing, but she stated that swelling in her hands made buttoning or snapping clothing almost impossible.  *Id*.  She also reported that she did laundry, albeit with some back and leg pain.  She could prepare her own simple meals for herself and her family daily.  She needed help moving clothes from the washer to the dryer and sweeping or mopping the house, but she could complete two loads of laundry per day and cleaned the house all week.  She could go out daily to transport her children to and from school, and she could go out more often in the evenings because the sun would not affect her lupus then.  *Id*.

Plaintiff further stated that she could still drive independently.  (ECF No. 14-9, pp. 49-56).  She shopped in stores independently twice a month, though a store employee helped load her groceries into the vehicle.  She enjoyed hobbies of reading, watching television, helping her children with homework daily, and watching them play sports about twice a year.  Plaintiff explained that she could not do almost any physical activity for more than five minutes.  In addition, she could not use her hands at all when they were inflamed, she was slowly losing her

vision, and her memory and concentration were limited by feeling as if she was in a fog.  Plaintiff stated that she used a back brace daily.  *Id*.

In September 2019, Plaintiff sought treatment for a headache, and her medications were reconciled.  (ECF No. 14-14, p. 97).  The physical exam and mental status exams were unremarkable.  Dr. Clark also submitted another migraine headache form in September 2019, asserting that Plaintiff experienced fewer than three migraines per week, each lasting two to four days, that her response to medication was fair, and she would miss less than one day per week. (ECF No. 14-14, pp. 110-111).  State agency medical consultant Dan Gardner, M.D., viewed the record upon reconsideration and affirmed Dr. Jarrard's finding of a light RFC in September 2019. (ECF No. 14-6, pp. 48-49).

During her follow-up appointment in October 2019, the treatment provider noted Plaintiff's history of headaches, radiculopathy, and undifferentiated connective tissue disease.  (ECF No. 14-14, p. 178).  The physical exam revealed normal findings.  *Id*.  Plaintiff returned for treatment for a headache in December, and her medications were reconciled.  (ECF No. 14-14, p. 158).  The physical and mental status exams were unremarkable.  *Id*.

Imaging results of Plaintiff's cervical and lumbar spine again demonstrated unremarkable results and no significant abnormalities in January 2020.  (ECF No. 14-14, p. 186; ECF No. 14-15, p. 9-11, 46).  Plaintiff also established care for chronic pain with Arkansas Spine and Pain. She explained that her pain averaged at 7/10, was worsened by movement and increased activity, but was relieved by medication.  Upon examination, Plaintiff exhibited tenderness to the cervical and lumbar spine with some reduced range of motion.  She also had a positive Patrick's test in the hips and sacroiliac joint area.  (ECF No. 14-14, p. 186; ECF No. 14-15, p. 9-11, 46).

Physical and mental status exams were unchanged as Plaintiff continued treatment for chronic pain in February 2020.  (ECF No. 14-15, p. 71).  It was noted that a lumbar nerve block gave her 100% relief from headaches for more than a month.  Plaintiff also reported that the occipital nerve block instantly relieved her headache 100%.  *Id*. at 73.  Plaintiff continued with medication management through April 2020.  *Id*. at 55.

Finally, Dr. Joshua Clark submitted a checkbox medical source statement in July 2020, listing Plaintiff's diagnoses of chronic migraines, chronic anemia, IBS, depression, anxiety, and PTSD.  (ECF No. 14-15, pp. 126-127).  Dr. Clark stated that his treatment relationship with Plaintiff began prior to 2016.  He opined that Plaintiff could frequently lift and carry five pounds, but only occasionally lift 10 lbs.  Plaintiff could never lift or carry more than 10 lbs.  Dr. Clark opined that Plaintiff could never use her hands for any repetitive actions, except for right hand simple grasping.  Plaintiff could use her right foot for repetitive movements but not her left foot. She could occasionally bend, squat, reach above head, and crouch, but never crawl, climb, stoop, or kneel.  She could occasionally tolerate exposure to unprotected heights and moving machinery, but never tolerate exposure to marked temperature changes, dust, fumes, and gases, or noise.  Also, Dr. Clark believed that side-effects from Plaintiff's medication may impact her capacity for work. *Id.*

It was Dr. Clark's opinion that Plaintiff's symptoms and impairments would frequently interfere with her attention and concentration.  (ECF No. 14-15, pp. 126-127).  Plaintiff would miss more than four days of work per month; need to elevate her feet during the workday; need a sit, stand, walk option; and need to recline or lie down during the workday more than allowable by typical breaks.  Dr. Clark also noted that Plaintiff could frequently drive automotive equipment as part of work and that Plaintiff did not need an assistive device to stand or walk.  *Id*.

11

### III.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

12

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  20 C.F.R. § 404.1520(a)(4).  The fact finder only considers a plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached.  20 C.F.R. § 404.1520(a)(4)(v).

## IV.   Discussion

Plaintiff raises one issue on appeal: whether substantial evidence supports the ALJ's finding that Plaintiff's statements concerning the effects of her disabling impairments were inconsistent with the medical and other evidence in the record.  After thoroughly reviewing the record, the undersigned finds the ALJ's finding supported by substantial evidence.

As her sole issue, Plaintiff contends the ALJ's finding regarding Plaintiff's subjective complaints was erroneous.  (ECF No. 17, pp. 5-14).  Plaintiff asserts that the medical evidence is consistent with her subjective statements despite the ALJ's finding to the contrary.  Plaintiff then summarizes the medical evidence in the record with little analysis.  She concludes by arguing that the burden shifted to the ALJ to prove Plaintiff could perform other work and that the ALJ failed to meet that burden.  *Id.*

Although the burden of production shifts to the Commissioner at step five of the sequential evaluation process, the ultimate burden of persuasion remains with the claimant to prove disability and demonstrate her RFC.  *Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004); *see Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545.  A disability claimant has the burden of establishing her RFC.

*Vossen*, 612 F. 3d at 1016.  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit Court of Appeals has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Part of the RFC determination includes consideration of a claimant's subjective statements regarding the intensity, persistence, and limiting effects of the alleged impairments.  An ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence.  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).  Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).  In addition to the claimant's prior work record, the *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 404.1529.  While an ALJ must consider these matters and give good reasons for discrediting a claimant's subjective

complaints, she need not explicitly discuss each of these factors in depth.  *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 1997).  In addition, when an ALJ states that she discharged her official duties as stated in her decision, we presume she has done so.  *See, e.g.*, *Willburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).

In her decision, the ALJ explicitly stated that she considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence.  (ECF No. 14-2, p. 36).  She further stated she "considered the claimant's subjective complaints of pain, the objective medical evidence, and any evidence relating to the claimant's daily activities; the duration, frequency, and intensity of the claimant's pain; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions.  (SSR 16-3p & 20 C.F.R. 416.920c)." *Id*. at 42.

The ALJ referenced the medical evidence in the record showing treatment for chronic pain syndrome with effective medication management and injection therapy.  (ECF No. 14-2, p. 42).  The ALJ specifically referenced the cervical x-ray showing minimum degeneration at C4/5 and C5/6 while the rest of Plaintiff's objective imaging was consistently unremarkable or within normal limits.  The ALJ acknowledged Plaintiff's diagnoses of undifferentiated connective tissue disease and positive ANA, as well as continuing treatment for headaches and migraines.  Noting Plaintiff's reports to her treatment providers that she was doing well in October 2019, the ALJ considered that Plaintiff's annual physical exam showed no abnormal findings.  Plaintiff's symptoms were managed effectively by medication, including injections and an occipital nerve block.

The ALJ also stated that she considered Plaintiff's description of her daily activities.  (ECF No. 14-2, p. 42).  Plaintiff stated in her function reports that she could not do almost any physical activity for more than five minutes, and the ALJ noted that Plaintiff described daily activities that were fairly limited despite relatively weak medical and other evidence supporting such limitations. A review of the record indicates that Plaintiff's daily activities even improved and expanded in the six-month period between her two function reports.  She took on the care of her five children, including transporting them to and from school, helping them with their homework daily, preparing all their daily meals, bathing them, and attending their sporting events occasionally. Plaintiff could complete her personal care despite lingering pain, complete two loads of laundry daily with some help, and clean the house all week.  Though she needed help loading her groceries into her vehicle, she could drive independently and shopped in stores twice a month.

The opinions from state agency medical consultants and treating physicians were also considered by the ALJ.  (ECF No. 14-2, p. 42).  She found unpersuasive the opinions of the treating physician as they were inconsistent with the treatment record.  While the ALJ found persuasive the state agency medical consultants' opinion that Plaintiff was capable of light, unskilled work, she stated that she considered Plaintiff's hearing testimony and additional medical evidence to find further accommodations for Plaintiff.  *Id*.

The ALJ, having reviewed this evidence, found that Plaintiff had severe impairments of undifferentiated connective tissue disease, migraine headaches, depression, anxiety, posttraumatic stress disorder, syncope, chronic pain, and fatigue.  (ECF No. 14-2, pp. 31-44).  The ALJ noted that Plaintiff also had non-severe impairments of "minimal degenerative disc disease of the cervical spine, chest pain with normal cardiac workup, left foot toe fracture, anemia (resolved),

obstructive sleep apnea, and back pain with normal findings on lumbar and thoracic MRIs." *Id*. at 34.

In determining RFC, the ALJ found Plaintiff capable of "sedentary work as defined in 20 C.F.R. § 404.1567(a) except due to syncope no hazards to avoid such as ladders, ropes, scaffolds, moving mechanical parts, unprotected heights, deep water and open flames; due to migraines no bright sunshine, no concentrated exposure to dust, fumes or other pulmonary irritants and office level noise; frequent bilateral handle and finger; simple routine repetitive tasks with supervision that is simple, direct and concrete; social interaction that is incidental to work performed." (ECF No. 14-2, p. 36). The ALJ concluded that Plaintiff's limitations were accommodated by this RFC of sedentary work with additional environmental and reaching restrictions. *Id*.

The gist of Plaintiff's argument appears to be a disagreement with the ALJ's ultimate conclusion that Plaintiff is not disabled. (ECF No. 17, pp. 5-14). Plaintiff, however, offers little to support this argument. While Plaintiff alludes to her subjective statements concerning the effects of her impairments, she does not assert what specific statements the ALJ should have found consistent with the medical evidence. Plaintiff names the severe impairments found by the ALJ, but she does not point to specific medical evidence that bolsters her subjective statements such that the ALJ erred in her conclusion. While she includes a reference to opinion evidence from treating physicians, Plaintiff does not state what aspects of those opinions support her argument. She does not assert what, if any, limitations were overlooked in the RFC based on the ALJ's allegedly erroneous assessment of Plaintiff's subjective statements. Moreover, Plaintiff does not present how, if at all, the ALJ's alleged error in assessing Plaintiff's statements would have resulted in a finding other than disabled. Thus, Plaintiff has failed to present any substantive argument to support a conclusion that the ALJ erred in evaluating Plaintiff's subjective statements.

A review of the record demonstrates mostly mild or normal objective medical findings, effective control of symptoms with conservative treatment, and generally independent activities of daily living.  A review of the ALJ's decision reveals that she properly supported her finding regarding Plaintiff's subjective statements based on the medical and other evidence in the record. As such, we cannot say that the ALJ erred in evaluating Plaintiff's subjective complaints.

Accordingly, the undersigned finds that the ALJ's decision to deny benefits in this case is supported by substantial evidence.

### V.      Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of July 2022.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE